```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
LAURENCE T. GLICKMAN, M.D.                            :
                                                      :
                            Plaintiff,                :
                                                      :       19-CV-5908 (VSB)
             - against -                              :
                                                      :       OPINION & ORDER
                                                      :
                                                      :
FIRST UNUM LIFE INSURANE                              :
COMPANY,                                              :
                                                      :
                            Defendant.                :
                                                      :
------------------------------------------------------X
```

Appearances:

Jennifer Lynn Hess
Ryan James McIntyre
Scott Madison Riemer
Riemer Hess LLC
New York, New York
*Counsel for Plaintiff*

Louis Philip DiGiaimo
McElroy, Deutsch, Mulvaney& Carpenter
Tinton Falls, New Jersey
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Laurence T. Glickman ("Plaintiff"), a doctor experiencing limitations in his ability to do his work after cancer surgery, filed this action against Defendant First UNUM Life Insurance Company ("Defendant" or "First Unum") alleging failure to pay out long-term disability benefits within the meaning of an insurance policy subject to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. The parties cross-moved for summary judgment regarding when Plaintiff satisfied the insurance policy's requirements to become eligible for payment of disability benefits, which in turn affects how

much money Plaintiff was due under the insurance policy.

For the reasons that follow, Plaintiff's motion is GRANTED, and Defendant's motion is DENIED.

I. **Background**

A. *The Long Term Disability Plan*

Plaintiff is a physician covered by his employer's long term disability insurance plan (the "Plan"), which was issued by Defendant and regulated by ERISA. (Pl. 56.1 ¶¶ 2–3).[1] The relevant sections of the Plan span one page. (*See* Plan.)[2] The Plan explains:

> **HOW DOES UNUM DEFINE DISAIBLITY?**
>
> **Physicians**
> You are disabled when Unum determines that:
>
> - [1] you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - [2] you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> You must be under the regular care of a physician in order to be considered disabled.

(Plan) (emphasis in original). The Plan then provides a separate definition of disability for non-physician employees, such as for "Management and Directors." (*See id.*) Next, the Plan says

> **HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO RECEIVE BENEFITS?**
>
> **Physicians, Management and Directors**
> You must be continuously disabled through your **elimination period.**
> Unum will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count towards your elimination period.

---

[1] "Pl. 56.1" refers to Plaintiff's Statement Pursuant to Local Rule 56.1. (Doc. 53-2.)

[2] Citations to "Plan" refer to a page titled Long Term Disability Benefit Information that is contained in a longer document on file with the Court. (Doc. 53-4 at 96.)

>Your elimination period is 90 days.
>
>You are not required to have a 20% or more loss in your indexed monthly earnings due to the same injury or sickness to be considered disabled during the elimination period.

(Plan) (emphasis in original). As will be seen, the parties' entire dispute turns on the final sentence of the above.

### B. *Plaintiff's Disability*

Plaintiff was diagnosed with prostate cancer in February of 2016 and had prostatectomy surgery on September 1, 2016. (Pl. 56.1 ¶¶ 9–10.) This surgery resulted in an injury that causes Plaintiff pain, weakness, and affects his stamina as relevant to his job. (*Id.* ¶¶ 11–12.) Plaintiff has not stopped working[3], but the injury interferes with Plaintiff's ability to practice medicine. (*Id.* ¶¶ 13–14.)

On December 8, 2017, Plaintiff filed for disability benefits under the Plan. (*Id.* ¶ 31.) On June 28, 2018, Unum approved Plaintiff's claim for disability benefits. (*Id.* ¶ 56.) In an approval letter, Unum stated that it "determined [Plaintiff's] disability date to be November 1, 2017," and that Plaintiff had met the Plan's elimination period due to "a greater than 20% loss of earnings" as of "March 29, 2018." (*Id.* ¶¶ 68–69.) Unum later recalculated and determined that, under what it believed to be a proper counting of days in the elimination period, the date of Plaintiff's disability began on September 1, 2016. (*See id.* ¶¶ 72–73.)

Under the Plan, Plaintiff is to be paid out disability benefits based on the income reported on his Form W-2 in the calendar year preceding the year in which he became disabled—the higher the income in the year pre-dating the disability, the higher the disability payment. (*See id.* ¶ 28.) According to Plaintiff, his disability date is May 1, 2017, which would result in a benefit

---

[3] This statement was made at the time of Plaintiff's filing in October 2020.

3

pegged to his 2016 Form W-2 income of roughly $805,000. (*See* Pl. SJ Br. 4;[4] Pl. 56.1 ¶ 89.) However, Defendant calculates Plaintiff's disability beginning on September 1, 2016, which would result in a benefit pegged to his 2015 Form W-2 income of $688,000. (*See* Def. SJ Br. 7–8;[5] Pl. 56.1 ¶ 88.)

Prior to this action, Plaintiff and Defendant engaged in negotiations and administrative proceedings over how much money was due to Plaintiff under the Plan, (*see* Pl. 56.1 ¶¶ 45–75); however, the details of those proceedings are not relevant to this Opinion & Order.

## II.     Procedural History

Plaintiff commenced this action on June 24, 2019, by filing a complaint alleging Unum violated ERISA by underpaying him benefits owed under the Plan. (Doc. 1.) Unum filed its answer on August 14, 2019. (Doc. 12.) The parties engaged in discovery before Magistrate Judge Stewart Aaron. (*See* Docs. 26–51.)

On October 16, 2020, the parties cross-moved for summary judgment. (Docs. 52–53.) They each filed papers opposing the other's motion for summary judgment and in further support of their respective motions for summary judgment. (*See* Docs. 54–59.) The cross-motions were fully briefed as of December 4, 2020, when the parties filed their reply briefs. (Docs. 58–59.)

## III.    Legal Standard

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a

---

[4] "Pl. SJ Br." refers to Plaintiff's Memorandum of Law in Support of Summary Judgment. (Doc. 53-1.)
[5] "Def. SJ Br." refers to Defendant's Brief in Support of Motion for Summary Judgment. (Doc. 52-1.)

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor and may grant summary judgment only when no reasonable trier of fact could find in favor of the

nonmoving party." *Cohen v. Liberty Mut. Grp. Inc.*, 380 F. Supp. 3d 363, 375 (S.D.N.Y. 2019) (quoting *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995)). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### IV. Discussion

#### A. *Applicable Law*

ERISA itself "does not set out the applicable standard of review for actions challenging benefit eligibility determinations." *Fay*, 287 F.3d at 103 (quoting *Zuckerbrod v. Phx. Mut. Life Ins. Co.*, 78 F. 3d 46, 49 (2d Cir. 1996)). "Instead, substantive ERISA law determines the proper standard of review that the Court should apply in reviewing the decision of the plan administrator." *Cohen v. Liberty Mut. Grp. Inc.*, 380 F. Supp. 3d 363, 376 (S.D.N.Y. 2019) (citation omitted). The Supreme Court has held that "denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Fay*, 287 F. 3d at 103–04 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

When conducting a *de novo* review of an ERISA plan benefit determination, a court's analysis is much the same as in interpreting an ordinary contract, as "unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning." *See Perreca v. Gluck*, 295 F.3d 215, 223 (2d Cir. 2002) (citation omitted); *see also Fay*, 287 F.3d at 104 (courts are to "review the [ERISA] Plan as a whole, giving terms their plain meanings.") "If there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d

246, 256 (2d Cir. 2004).

### B. *Application*

The parties agree that the only question in this case is whether, as a matter of law, the Plan requires Plaintiff to have experienced "a 20% or more loss in . . . indexed monthly income" during the 90-day elimination period before he became eligible for disability benefits. (*See* Def. SJ Br. 1; Pl. SJ. Br. 7–8.) If the answer is yes, then Plaintiff did not become eligible for disability payments until 2017, which would lead to benefit payments tied to his 2016 income. If the answer is no, then Plaintiff became eligible for disability payments in 2016, which would lead to benefit payments tied to his lower 2015 income. The parties also agree that I am to apply a *de novo* standard of review. (Def. SJ. Br. 11; Pl. SJ Br. 7.)

This is thus a dispute as to the plain meaning of the Plan. *See Perreca*, 295 F.3d at 223. As such, "any ambiguity in the language used in" the Plan "should be construed against the interests of the party that drafted the language." *Id.* (collecting cases).

Here, I find that Plaintiff's reading is most logical: the Plan's elimination period requires a loss of earnings. This reading does the most to "give effect to all of" the Plan's "provisions" and render them consistent with each other, especially when taking into account how the Plan is structured. *See id.* at 224 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)); *see also Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994) (noting the well-established principle of contract construction that "all provisions of a contract be read together as a harmonious whole, if possible"). The Plan defines "disability" as necessitating that a covered physician must be (1) "limited from performing the material and substantial duties of [his] regular occupation due to [his] sickness or injury; and" (2) he must "have a 20% or more loss in [his] indexed monthly earnings due to the same sickness or injury." (Plan.) I will refer to

these requirements, respectively, as the "Limitation Requirement" and the "Income Requirement," and together I will refer to them as the "Requirements." The physician becomes "eligible to receive benefits" once he is "continuously disabled through [his] elimination period" of 90 days. (Plan.) Reading the Plan to this point, it appears that the elimination period requires one to "continuously" satisfy both Requirements for the elimination period's 90-day duration.

      Next, the qualifying clause states that a covered physician is "not required to have a 20% or more loss in [his] indexed monthly earnings due to the same injury or sickness to be considered disabled during the elimination period." (Plan.) I will call this the "EP Qualifier." Defendants argue that the EP Qualifier means that elimination period days are counted from the time that the Limitation Requirement is satisfied, regardless of the Income Requirement. However, Defendant's reading leads to more questions than answers. For example, why would the Plan say a covered physician must be "continuously disabled" during the elimination period, where "disabled" has already been defined as entailing both Requirements, if only the Limitation Requirement needs to be in effect? Defendant's reading would make more sense if the Plan said that a covered physician "must be continuously limited from performing the material and substantial duties of [his] regular occupation due to [his] sickness or injury during the elimination period." Similarly, if the EP Qualifier completely nullifies the Income Requirement's relevance to the elimination period, why include it two paragraph breaks after stating that a covered physician "must be continuously disabled" to satisfy the elimination period? It would be far more natural to provide such a major qualification sooner, e.g., "You must be continuously disabled through your elimination period, but you need not experience a 20% or more loss in your indexed monthly earnings to be considered disabled during this elimination period."

8

Moreover, Defendant's reading fails to explain why the EP Qualifier speaks specifically to a "loss in . . . indexed monthly earnings due to the same injury or sickness." If Defendant was correct that "[l]oss of income is not required during this 90-day Elimination Period," (Def. SJ Br. 17), then surely the EP Qualifier would say that. However, the EP Qualifier does not go that far. It only requires that a threshold of "loss in . . . monthly earnings due to the same injury or sickness" is "not required" "to be considered disabled during the elimination period." (Plan.) Defendant's reading thus eliminates the phrase "due to the same injury or sickness" from the EP Qualifier.

By comparison, Plaintiff's reading gives effect to more of the Plan as written, making it the preferable reading. Whereas Defendant argues that the EP Qualifier should be read as excising the Income Requirement from the definition of disability during the elimination period, Plaintiff's reading requires no such deletions. As noted, to meet the Requirements that define disability under the Plan, a person must be "limited from performing the material and substantial duties of [his] regular occupation due to [his] sickness or injury; and" must "have a 20% or more loss in [his] indexed monthly earnings due to the same sickness or injury." (Plan.) Plaintiff's reading focuses on those last seven words. As Plaintiff explains the Plan, a covered physician is disabled where a single "sickness or injury" is the cause of both the Limitation Requirement and the Income Requirement. Thus, the EP Qualifier "merely provides an exception during the elimination period from the more restrictive requirement in the definition of disability—that the 20% loss must be 'due to the *same* sickness or injury.'" (Pl. SJ Br. 8.) Plaintiff's reading does not require that I ignore or write certain words out of the Plan; therefore, I find Plaintiff's reading to be preferable.

Moreover, even if one were to find both parties' readings reasonable, and thus that the

9

Plan as drafted is ambiguous, that "ambiguity . . . should be construed against the party that drafted the language." *Perreca*, 295 F.3d at 223; *see also Critchlow*, 378 F.3d at 256 ("If there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer.")  Application of this rule means that any ambiguity is construed against the Defendant insurer and in favor of Plaintiff.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED.  The Clerk of Court is respectfully directed to close the open motions on the docket.

Within 21 days of this Opinion & Order, the parties are to file a status report indicating whether this case should be referred to a magistrate judge for an inquest on damages.

SO ORDERED.

Dated: June 7, 2023
      New York, New York

*Vernon Broderick* (signature)
Vernon S. Broderick
United States District Judge